# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
Assigned On Briefs May 21, 2013

### STATE OF TENNESSEE v. JAMES ANTHONY JOHNSON, JR.

**Appeal from the Criminal Court for Knox County**
**No. 96373    Bob R. McGee, Judge**

---

**No. E2012-01212-CCA-R3-CD - Filed July 30, 2013**

---

The Defendant, James A. Johnson Jr., pleaded guilty in the Criminal Court for Knox County to possession with the intent to sell marijuana within 1000 feet of a school, a Class E felony, possession of a firearm during the commission of a dangerous felony, a Class D felony, possession of drug paraphernalia, a Class A misdemeanor, and driving on a suspended license, a Class B misdemeanor.  The Defendant was sentenced to three years for possession with the intent to sell marijuana with two years of the sentence to be served at 100% and the remaining year to be served at 30%, three years for possession of a firearm during the commission of a dangerous felony to be served consecutively to the marijuana sentence, eleven months and twenty-nine days for possession of drug paraphernalia to be served concurrently with the marijuana sentence, and six months for driving on a suspended license to be served concurrently with the marijuana sentence.  On appeal, the Defendant presents a certified question of law regarding the legality of the traffic stop and subsequent arrest and searches that led to his convictions.  Because the certified question was not properly reserved, we dismiss the appeal for lack of jurisdiction.

### Tenn R. App. P . 3 Appeal as of Right; Appeal Dismissed

JOSEPH M. TIPTON, P.J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and CAMILLE R. MCMULLEN, JJ., joined.

Joseph A. Fanduzz, Knoxville, Tennessee, for the appellant, James Anthony Johnson, Jr.

Robert E. Cooper, Jr., Attorney General and Reporter; Deshea Dulany Faughn, Assistant Attorney General; Randall Eugene Nichols, District Attorney General; and TaKisha Monette Fitzgerald, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

At the suppression hearing, Knoxville Police Department Officer Andrew Gyorfi testified that on December 18, 2010, he was told that the Defendant was a suspect in a crime and was driving a particular car nearby. He said that he accessed the Defendant's driver's license photograph and record on his patrol car's computer, which showed that the Defendant's license was suspended. He said his patrol car's video camera recorded his stop of the Defendant. He said the Defendant continued to his house, pulled over, and got out of the car. Officer Gyorfi said he detained the Defendant for driving on a suspended license and asked him if he possessed anything illegal. He said the Defendant stated that he had something in his pants pocket and that it was marijuana.

As the recording of the stop played in the courtroom, Officer Gyorfi testified that the Defendant asked why he was being handcuffed and that Officer Gyorfi responded that the Defendant was driving with a suspended license. He said that the Defendant asked how Officer Gyorfi knew he had a suspended license. He stated that after the officers checked the Defendant's record and called a K-9 officer, the Defendant asked again how Officer Gyorfi knew he had a suspended license. He said he showed the Defendant the photograph and information that showed he had a suspended license. Officer Gyorfi said the Defendant knew that his license was suspended.

On cross-examination, Officer Gyorfi testified that he had seen the Defendant's car seconds before he stopped him, that he waited on a side road because an investigator told him that the Defendant's car was moving in that direction, and that the Defendant was the suspect in an armed robbery. He said that while he was on the side road, he saw the car that matched the investigator's description but that he could not see the driver when he stopped the car.

Officer Gyorfi testified that he got out of his police car with two other officers, drew his gun, knocked on the Defendant's window, asked to see his hands, pulled the Defendant from the car, handcuffed him, and placed him in the back of the police cruiser. He said that he knew the Defendant's identity when he saw him get out of the car because he had seen the photograph. He agreed that he did not identify the Defendant other than by sight until the Defendant was in the police cruiser and that the Defendant was stopped and detained because he believed the Defendant was driving on a suspended license. Officer Gyorfi said that he drew his gun because the Defendant was a suspect in an aggravated robbery or burglary and that he deemed it necessary for his safety.

Officer Gyorfi testified that he called the investigators to confirm the Defendant was the correct suspect for the burglary. He said that there was confusion with the Defendant's name based on a previous incident when the Defendant used the name "Davis" and that he called to make sure the Defendant was the person the investigators wished to interview.

Officer Gyorfi testified that after the Defendant was in the police cruiser, the Defendant consented to a search of the car. He said they searched the car and found 76.7 grams of marijuana and $948. He said the Defendant also consented to a search of the house where the Defendant stopped, which was the Defendant's mother's house. He said that as a result of that search, they found six and one-half pounds of marijuana, a Ruger .45 caliber handgun, an assault rifle, and $1320.

Officer Gyorfi testified that he did not have an arrest warrant for Mr. Johnson when he handcuffed him. On redirect examination, he said that at the time of the arrest, he had turned on his cruiser's blue lights. He said that he knew the Defendant had a suspended license and was an aggravated robbery suspect. He said that when he went to the car, he told the Defendant that he was under arrest for driving with a suspended license.

The trial court found that Officer Gyorfi possessed sufficient information showing the Defendant's license was suspended and that the Defendant was driving the specific car described by the police dispatcher. It found that the identification of the Defendant from the photograph on the computer was sufficient to arrest him for driving with a suspended license and that the officer's knowledge the Defendant was suspected in another crime was immaterial to his authority to make the arrest for driving with a suspended license. It held that any further discussion of the Defendant's identity concerned whether he was a home invasion suspect. The court found that the searches of the car and the house following the arrest were appropriate, consensual, and lawful. The court denied the motion to suppress.

After the suppression hearing, the Defendant pleaded guilty, reserving two certified questions for appeal:

> (1) Whether on December 18, 2010, an illegal seizure occurred when Knoxville Police Department officers pulled the Defendant's vehicle over?

> (2) Whether on December 18, 2010, an illegal seizure occurred when Knoxville Police Department officers made the Defendant exit his vehicle, placed him in handcuffs, and then placed him in a police cruiser?

Initially, the State contends that this court does not have the jurisdiction to review the issue because the Defendant failed to reserve the certified questions of law properly. It argues that the questions reserved are too broad because they do not include the reasons given by the trial court in denying the motion to suppress. It notes that the questions in the Defendant's brief have modified the original questions.

Pertinent to this appeal, Tennessee Rule of Criminal Procedure 37(b)(2)(A) provides that an appeal can come from a plea of guilty if the defendant enters into a plea agreement

and explicitly reserves with the consent of the State and the trial court a certified question of law that is dispositive of the case. It specifies that:

> (i) the judgment of conviction or order reserving the certified question that is filed before the notice of appeal is filed contains a statement of the certified question of law that the defendant reserved for appellate review; [and]
>
> (ii) the question of law as stated in the judgment or order reserving the certified question identifies clearly the scope and limits of the legal issue reserved [.]

Tenn. R. Crim. P. 37(b)(2)(A)(i)-(ii); *see also State v. Armstrong*, 126 S.W.3d 908 (Tenn. 2003); *State v. Irwin,* 962 S.W.2d 477 (Tenn. 1998); *State v. Pendergrass*, 937 S.W.2d 834 (Tenn. 1996); *State v. Preston*, 759 S.W.2d 647 (Tenn. 1988).

Our supreme court has said:

> [T]he question of law must be stated so as to clearly identify the scope and the limits of the legal issue reserved. For example, where questions of law involve the validity of searches and the admissibility of statements and confessions, etc., *the reasons relied upon by defendant in the trial court at the suppression hearing must be identified in the statement of the certified question of law* and review by the appellate courts will be limited to those passed upon by the trial judge and stated in the certified question, absent a constitutional requirement otherwise.

*Preston*, 759 S.W.2d at 650 (emphasis added); *see also Pendergrass*, 937 S.W.2d at 836. The burden is on the Defendant to ensure that he has complied with the requirements of Rule 37(b). *See Pendergrass*, 937 S.W.2d. at 838.

We view the present case to be similar to the circumstances in *State v. Kale J. Sandusky*, No. M2008-00589-CCA-R3-CD (Tenn. Crim. App. Mar. 4, 2009), *perm. app. denied* (Tenn. Aug. 24, 2009). In that case, the certified question was "'whether or not the entries by law enforcement into [the Defendant's] home on October 23, 2006 were in violation of constitutional guarantees against unreasonable searches and seizures under the state and federal constitutions . . . .'" This court concluded that the question was too broad and dismissed the appeal. *Id.,* slip op at 4.

The Defendant has not complied with the requirements because he failed to identify either the grounds upon which he argued that the stop and arrest were illegal or upon which the trial court justified its decision. We conclude that this court is without jurisdiction to

review the question of the search and seizure, and we dismiss the appeal. *See, e.g., State v. Thomas G. McConnell*, No. M2011-00675-CCA-R3-CD (Tenn. Crim. App. Dec. 13, 2011) (concluding that the question "[w]hether the motion to suppress should have been granted because the stop of the defendant's vehicle was unlawful" was improper because it failed to state the Defendant's argument's rationale), *perm. app. denied* (Tenn. April 27, 2012); *State v. John Anthony Partin*, M2010-00190-CCA-R3-CD (Tenn. Crim. App. Feb. 24, 2011) (concluding that a question that did not state the defendant's rationale used at the suppression hearing did not sufficiently identify the scope of the issue); *State v. Tobais Tony Horton and Latoya Lynn Townsend*, No. W2008-01170-CCA-R3-CD (Tenn. Crim. App. Aug. 13, 2009) (concluding that a question that identifies neither the rationale below nor the particular search it is challenging is improperly reserved), *perm. app. denied* (Tenn. Dec. 14, 2009).

In consideration of the foregoing and the record as a whole, we dismiss the appeal.


_____
JOSEPH M. TIPTON, PRESIDING JUDGE